## UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**MELVIN JACKSON**                                      **CIVIL ACTION**

**VERSUS**                                                          **NO.  09-3258**

**N. BURL CAIN, WARDEN**                          **SECTION "I"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.**      **Factual Background**

The petitioner, Melvin Jackson ("Jackson"), is an inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 24, 2001, Jackson and two co-defendants, Troy Albert and Michael Molina, were charged by bill of information in Jefferson Parish with conspiracy to

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

commit armed robbery (count one) and with the armed robbery of Constant Probst (count two).[3] Jackson was also charged in a third count with being a felon in possession of a weapon.  The co-defendant Molina was also charged with four additional counts of simple burglary of Probst's residence, aggravated burglary of the residence of David Hackneye, unauthorized entry of an inhabited dwelling belonging to Janice Molina, and theft of an automobile valued at over $500.00 belonging to Janice Molina.

The record reflects that, on August 30, 2001, Constant "C.J." Probst, was working in his coin shop on Veterans Boulevard in Metairie, Louisiana, when he was robbed by two men at gunpoint.[4] A white male, later identified as co-defendant Michael Molina, pressed the door buzzer to the shop. He was carrying a long duffel bag.  Probst let him in by deactivating the door's security device. Molina stood in the doorway and inquired whether Probst was buying silver.  Probst asked if Molina was referring to silver coins, and Molina said yes.  Molina then entered the shop leaving the door partially opened at which time a black male, later identified as Melvin Jackson, entered the store. Molina put his duffel bag on the counter, leaned over, and displayed a can of mace.  Jackson then walked around the counter and pointed a black automatic pistol at Probst.

The two men ordered Probst to go to the back of the shop where he was tied up with duct tape. Jackson filled the duffel bag with jewelry and coins from the shop.  He then demanded to know where the cash was and repeatedly threatened to kill Probst.  The two men eventually left the shop at which time Probst managed to free one arm and call the police.  When the police arrived, he gave them a description of the two men.

---

[3]St. Rec. Vol. 1 of 8, Bill of Information, 10/24/01 (as amended 5/1/03).

[4]The facts are taken from the published opinion of the Louisiana Fifth Circuit on direct appeal.  *State v. Jackson*, 880 So.2d 69, 71-72 (La. App. 5th Cir. 2004); St. Rec. Vol. 5 of 8, 5th Cir. Opinion, 04-KA-293, pp. 3-4, 7/27/04.

After the robbery, Probst sent a list of all the items that were stolen to other coin dealers in the Gulf South area.  Approximately one week later, Detective Jeffrey Rodrigue of the Jefferson Parish Sheriff's Office received information from a coin dealer in Biloxi, Mississippi, who recognized Probst's handwriting on some coins that Molina was trying to sell at his shop.  Molina and another co-defendant, Troy Albert, were arrested in Biloxi by the Biloxi police.  A search of their hotel room revealed a can of mace and various coins.  Additionally, a fingerprint taken from Probst's shop matched that of Molina.

Molina and Albert were brought to New Orleans where they gave statements which led Detective Rodrigue to develop Jackson as a suspect.  Detective Rodrigue showed a photographic lineup to Probst, who positively identified Jackson as one of the perpetrators of the robbery.  A search warrant was executed at the apartment where Jackson was staying.  The search yielded jewelry taken from Probst's shop, the weapon used in the armed robbery, and clothing identified by Probst as having been worn by the perpetrators.

At trial, Troy Albert testified against Jackson, who is her brother.  Albert had entered a plea agreement wherein she agreed to testify against defendant in exchange for a twenty year sentence after her plea of guilty.  Her testimony revealed that she, Molina, and Jackson were at Jackson's girlfriend's apartment on August 30, 2001, when the robbery was planned.  Molina and Jackson left the apartment and returned with two duffel bags full of coins and jewelry.  She was given some jewelry, and the remaining stolen goods were divided between Molina and Jackson.  The next day, she and Molina went to Houston and pawned some of the stolen goods.  They then went to Biloxi and tried to sell some of the stolen goods when they were arrested.

On February 4, 2002, Albert entered a plea of guilty to counts one and two, and was sentenced to serve 20 years in prison on each count to run concurrently.[5]

Jackson's counsel filed pretrial motions including motions for a preliminary examination, to suppress the identification, to suppress the evidence, and to suppress the confession.[6]  The Trial Court heard the motions on September 6, 2002, and the motions to suppress were denied.[7]

On December 17, 2002, Molina was called before a jury for trial.[8]  After jury selection, he withdrew his plea of not guilty and entered a plea of guilty to counts one and two.[9]  The remaining counts against him, counts four, five, six, and seven, were dismissed.[10]  He was sentenced to serve 40 years in prison on each count to run concurrently.[11]

Jackson was tried before a jury on counts one and two on May 1, 2003, and he was found guilty as charged on both counts.[12]  The Trial Court denied Jackson's motion for new trial on May 28, 2003.[13]  After waiver of legal delays, the Court sentenced Jackson to serve 49 years and six months in prison on the conspiracy conviction concurrent with 99 years in prison on the armed robbery

---

[5]St. Rec. Vol. 3 of 8, Plea Minutes (Albert), 2/4/02; Waiver of Constitutional Rights Plea of Guilty (Albert), 2/4/02; Plea Transcript (Albert), 2/4/02.

[6]St. Rec. Vol. 1 of 8, Motion for Preliminary Examination, 9/6/02; Motion to Suppress the Identification, 9/6/02; Motion to Suppress Evidence, 9/6/02; Motion to Suppress Confession, 9/6/02.

[7]St. Rec. Vol. 1 of 8, Motion Hearing Minutes, 9/6/02; Motion Hearing Transcript, 9/6/02.

[8]St. Rec. Vol. 3 of 8, Trial Minutes (Molina), 12/17/02.

[9]*Id.*; St. Rec. Vol. 3 of 8, Waiver of Constitutional Rights Plea of Guilty (Molina), 12/17/02; St. Rec. Vol. 6 of 8, Plea Transcript (Molina), 12/17/02.

[10]St. Rec. Vol. 3 of 8, Sentencing Minutes (Molina), 12/17/02.

[11]*Id.*

[12]St. Rec. Vol. 1 of 8, Trial Minutes, 5/1/03; Jury Verdict, 5/1/03; Trial Transcript, 5/1/03; St. Rec. Vol. 2 of 8, Trial Transcript (continued), 5/1/03.

[13]St. Rec. Vol. 1 of 8, Sentencing Minutes, 5/28/03; Motion for New Trial, 5/28/03; St. Rec. Vol. 2 of 8, Sentencing Transcript, 5/28/03.

charge.[14]  The Court also denied Jackson's motion to reconsider the sentence.[15]  The State thereafter filed a multiple bill that same day charging Jackson as a second felony offender.[16]  The multiple bill was later withdrawn on July 1, 2003.[17]  On August 19, 2003, the Trial Court notified Jackson of the delays for seeking post-conviction relief.[18]

On direct appeal, Jackson's counsel raised two assignments of error:[19] (1) the Trial Court erred in failing to sustain the defense objections to the improper closing argument; and (2) the Trial Court erred in imposing an excessive sentence.  On July 27, 2004, the Louisiana Fifth Circuit affirmed the conviction and sentence finding no merit to either claim.

The Louisiana Supreme Court denied Jackson's subsequent writ application on May 6, 2005.[20]  Jackson's conviction became final 90 days later, on August 4, 2005, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[14]*Id.*

[15]St. Rec. Vol. 1 of 8, Sentencing Minutes, 5/28/03; St. Rec. Vol. 1 of 8, Motion to Reconsider Sentence, 5/28/03.

[16]*Id.*; St. Rec. Vol. 1 of 8, Multiple Bill, 5/28/03.

[17]St. Rec. Vol. 4 of 8, Minute Entry, 7/1/03.

[18]St. Rec. Vol. 1 of 8, Notice of Post-Conviction Deadlines, 8/19/03.

[19]St. Rec. Vol. 2 of 8, Appeal Brief, 04-KA-293, 4/12/04; Reply Brief, 04-KA-293, 5/6/04.

[20]*State v. Jackson*, 901 So.2d 1094 (La. 2005); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2005-KO-0232, 5/6/05; St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 05-KO-232, 1/28/05 (postal metered 8/18/04, dated 8/17/04); St. Rec. Vol. 5 of 8, La. S. Ct. Letter, 2005-KO-232, 1/28/05 (showing postal meter 8/18/04).

II.     **Post-Conviction Proceedings**

On May 2, 2006, Jackson submitted an application for post-conviction relief to the Trial Court raising the following grounds for relief:[21] (1) counsel gave ineffective assistance where he (a) failed to object to the dismissal of the first panel of jurors, (b) failed to raise a *Batson* challenge to the State's use of peremptory strikes against African American panelists, (c) failed to object to the admissibility of the evidence seized without a valid warrant, (d) failed to call Monica McKinney to testify that she was not presented with a warrant to search her residence and that the clothing seized belonged to her, (f) failed to object to hearsay testimony, (g) failed to request an expert to testify regarding the effects of Parkinson's disease, (h) failed to object to the leading questions by the prosecutor, (I) failed to object to the court's failure to admonish the jury not to discuss the case during breaks, (j) failed to admonish the State's witnesses not to discuss the case during breaks, and (k) failed to object to the Trial Court's limitation on the examination of prospective jurors; (2) he was denied a fair trial due to prosecutorial misconduct where the prosecutor misrepresented the terms of Troy Albert's plea to her; and (3) appellate counsel rendered ineffective assistance where counsel failed to raise the ineffective assistance of trial counsel.

On January 28, 2008, Jackson wrote a letter to the Trial Court inquiring as to the status of his post-conviction application.  The Trial Court thereafter issued an order recognizing its inadvertent delay in addressing the application.[22]  The Court held that Jackson's claim of ineffective assistance with regard to dismissal of the first panel of jurors on the basis that it was not appropriate for post-conviction review under La. Code Crim. P. art. 930.3 and otherwise was not preserved for post-

---

[21]St. Rec. Vol. 7 of 8, Uniform Application for Post-Conviction Relief, 5/8/06 (dated 5/2/06); Motion for Leave to File Supplement, 5/11/06.

[22]St. Rec. Vol. 7 of 8, Trial Court Order, 2/14/08.

conviction review under La. Code Crim. P. art. 930.4.  The Court also declined to review the prosecutorial misconduct claim on the basis that it failed to present a claim for review under La. Code Crim. P. art. 930.3.  The Court denied relief on the remaining claims finding that Jackson failed to establish his entitlement thereto under *Strickland v. Washington*, 466 U.S. 668 (1984), and related state law.

The Louisiana Fifth Circuit denied Jackson's related writ application on April 3, 2008, finding no error in the trial court's ruling.[23]  The Louisiana Supreme Court also later denied without stated reasons Jackson's application to that Court on February 6, 2009.[24]

## III.   <u>Federal Petition</u>

On April 14, 2009, the Clerk of this Court filed Jackson's petition for federal habeas corpus relief, in which he alleged that his counsel rendered ineffective assistance where he failed to raise a *Batson* challenge to the prosecution's use of peremptory challenges to exclude African American panelists.[25]  In his supplemental complaint, Jackson also argued that counsel was ineffective where he failed to properly challenge the unconstitutionality of the evidence used at trial where the evidence was seized without a warrant.[26]

---

[23]The record does not contain a copy of this writ application or the Court's subsequent order.  A copy of the order is attached to Jackson's federal petition.  Rec. Doc. No. 1-2, p. 75, 5th Cir. Order, 08-KH-256, 4/3/08.

[24]*State ex rel. Jackson v. State*, 999 So.2d 776 (La. 2009); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2008-KH-1091, 2/6/09; La. S. Ct. Letter, 2008-KH-1091, 5/21/08 (showing postmark of 5/1/08); St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 08-KH-1091, 5/21/08 (dated 4/30/08).

[25]Rec. Doc. No. 1.

[26]Rec. Doc. No. 12.

The State filed a response in opposition to Jackson's petition as supplemented arguing that his claims are without merit.[27]  The State argues that Jackson failed to submit anything to support his conclusory argument that the State used its peremptory challenges to exclude African Americans.  The State further argues that Jackson's counsel filed pretrial motions seeking to suppress the evidence and did not act in a deficient manner in challenging the evidence at pretrial or at trial.

In his traverse, Jackson replies only to the State's argument as to the second claim where he contends that the warrant was not properly obtained and that counsel failed to adequately challenge the State's case by simply filing pretrial motions.[28]

## IV.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[29] applies to this petition, which is deemed filed in this court under the federal mailbox rule on October 6, 2008.[30]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

---

[27]Rec. Doc. No. 14.

[28]Rec. Doc. No. 16.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Wright's federal habeas petition on October 28, 2008, when pauper status was granted.  Wright dated his signature appearing on the first petition and memorandum submitted to the Court on October 6, 2008.  This is presumed to be the earliest date on which he could have delivered the documents to prison officials for mailing.  In correcting his deficiencies, Wright submitted as second set of papers dated October 14, 2008.  Using either date, his petition is still timely.

"procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The State has not presented any procedural defenses to Jackson's petition, conceding that his claims are exhausted and his petition is timely filed. In reviewing the procedural history of this matter, the Court finds that the petition is timely filed. The record also reflects that each of the claims has been adjudicated in the state courts for exhaustion purposes and none are in procedural default.

## V.    <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

10

**VI.**     **Ineffective Assistance of Counsel (Claim Nos. 1 and 2)**

Jackson alleges that his trial counsel gave ineffective assistance by failing to lodge a *Batson* challenge during voir dire and by failing to properly challenge the evidence seized without a warrant. He raised these grounds on post-conviction review and the Trial Court denied relief pursuant to the standards set forth in *Strickland*. This was the last reasoned decision on the issues because the appellate court and the Louisiana Supreme Court denied relief without providing additional reasons. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). The State contends that each of Jackson's grounds are without merit and should be denied.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland*, 466 U.S. at 668, relied upon by the state trial court. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance of counsel, the petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, the petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must

show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). The analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274,

282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

A.      **Failure to Lodge a *Batson* Challenge**

Jackson argues that the prosecution impermissibly used peremptory challenges to exclude African-Americans from the jury venire in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and that trial counsel was ineffective for failing to object to the prosecution's misuse of its peremptory challenges. In *Batson*, the Supreme Court held that purposeful racial discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause. *Batson*, 476 U.S. at 89. In evaluating whether a petitioner has established a *Batson* violation, a three-step analysis is employed, with the first step requiring a petitioner to make a prima facie showing that a peremptory challenge has been exercised on the basis of race. *Stevens v. Epps*, 618 F.3d 489, 492 (5th Cir. 2010).

In the instant matter, as argued by the State, Jackson provides no evidence to support his bald, unsupported allegation that the State misused its peremptory strikes. He offers no reasons for his failure to do so here or in the state courts, and he does not challenge the State's assertion that the record and the trial transcript provide no such evidence or any indication that peremptory challenges were used to discriminate against African Americans.

13

The voir dire portion of the trial transcript reflects that Jackson was present in court at the time the jury was chosen. His presence should enable him to provide some information regarding the racial composition of his jury and how many black venire members were peremptorily challenged by the State. In spite of this, Jackson has failed to provide even this bare minimum of evidence in support of his claim, either here or in the state courts. Accordingly, Jackson has clearly failed to satisfy his burden of proof to show that his counsel failed to make what would have been a meritorious objection which would entitle him to relief under *Strickland*. *See Turner v. Epps*, No. 07CV77, 2010 WL 653880, at *7 (N.D. Miss. Feb. 19, 2010) ("As Petitioner cannot establish that any minority venireperson was struck by the State, much less that they were struck with a discriminatory intent, he cannot establish ineffective assistance of counsel on this conclusory argument"); *Bell v. Director, TDCJ-CID*, No. 03CV36, 2005 WL 2977771, at *6 (E.D. Tex. Nov. 02, 2005) (citations omitted) (Petitioner's claim that a juror was improperly struck "is a conclusory allegation . . . insufficient to support a petition for a writ of habeas corpus."); *Eastridge v. U.S.*, 372 F. Supp.2d 26, 61 (D.D.C. May 26, 2005) ("Petitioners cannot establish improper application of peremptory challenges because they present no evidence of selective exclusion and cannot produce evidence of the racial composition of the venire.").

Therefore, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*. Jackson is not entitled to relief on this claim.

### B.  Failure to Challenge the Evidence Obtained Without a Warrant

Jackson alleges that his counsel was ineffective in his challenge to the evidence used at trial on the basis that the evidence was seized without a warrant in violation of the Fourth Amendment. He contends that the warrant relied upon by the officers was not issued until after the search of the McKinney residence was conducted and the evidence was seized. Under a broad reading, he contends

that his counsel was ineffective for failing to call McKinney as a witness to testify that the warrant was never shown to her and for being unsuccessful in having the evidence excluded on these grounds.

The United States Supreme Court has recognized that "[i]n *Kimmelman* [*v. Morrison,* 477 U.S. 365, 374 (1986)], the Court held that although certain Fourth Amendment violations are themselves not cognizable on federal habeas review, see *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L. Ed.2d 1067 (1976), counsel's failure to litigate such Fourth Amendment claims competently may still give rise to a cognizable ineffective-assistance claim." *Lockhart v. Fretwell*, 506 U.S. 364, 380 (1993). To show prejudice within the meaning of *Strickland* when the alleged deficiency relates to a Fourth Amendment claim, petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *See Kimmelman,* 477 U.S. at 375. Jackson has not made this showing.

The record reflects that the Trial Court held a full hearing on the motions to suppress the evidence, including the one filed by Jackson's counsel, on September 6, 2002.[31] The relevant testimony and evidence presented at the hearing reflect that Jackson's counsel was also able to question Detective Rodrigue about the warrant obtained to search the McKinney residence where Jackson had been staying in Jefferson Parish. The first copy of the warrant presented by the prosecutor at the hearing apparently did not bear the issuing judge's signature.[32] The prosecutor quickly obtained a copy of the signed warrant as the hearing continued. The prosecutor also had a copy of the signed consent form from Monica McKinney to allow the officers to search her car.

Detective Rodrigue testified that he obtained a warrant to search McKinney's residence after learning from Molina and Albert that Jackson had been staying there. The officers went to the

---

[31]St. Rec. Vol. 1 of 8, Motion Hearing Minutes, 9/6/02; Motion Hearing Transcript, 9/6/02.

[32]*Id*., pp. 22-23.

residence and had to use force to gain entry to execute the warrant.  Jackson's counsel questioned the officer on cross-examination which revealed that there were no bills or mail at the residence to link Jackson to the residence.  The officer did inventory of clothing and other personal items in an upstairs bedroom which belonged to Jackson.  He also testified that Jackson was present when the search warrant was executed on the McKinney residence.  After considering the testimony and argument of counsel, the Trial Court denied the motions to suppress, and other motions heard that day.

In addition to the foregoing, the record before this Court contains signed copies of the affidavit used to apply for the warrant, the warrant, and the consent form executed by Monica McKinney.[33]

In this case, Jackson challenges the search warrant, and hence the admissibility of the evidence under the Fourth Amendment, based on his suggestion that the warrant was never shown to McKinney probably because it was not issued before the detectives arrived at the residence.  His underlying premise is that, as a matter of law, a search may be conducted pursuant to a warrant only after the warrant has been *presented to* the property owner.  That clearly is not the case under the United States Constitution.  *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006) (the Fourth Amendment imposes no requirement that the executing officer present the property owner with a copy of the warrant before conducting the search).  Moreover, Jackson cites no authority, and this Court has found none, to establish that Louisiana law was to the contrary.

Further, in the instant case, the credible testimony showed that the search warrant was applied for and issued prior to the search of the McKinney residence.  The record is clear that the State had a valid signed warrant at the suppression hearing, and there was no basis for his counsel to challenge the warrant on that basis.

---

[33]St. Rec. Vol. 8 of 8, Application For and Sworn Proof of Probable Cause for the Iussuance of a Search Warrant Herein, 9/9/01; Search Warrant, 9/9/01; McKinney's Consent Form, 9/9/01.

Jackson also suggests that the fact that the warrant does not have a time of issuance lends itself to support his conclusion that the residential search was made without a warrant or consent. However, there is nothing in the testimony at the suppression hearing or trial that would indicate that the deputies acted without probable cause or without a signed and valid warrant when they entered the McKinney residence. They also had her consent to search her car. Jackson offers nothing, and the record demonstrates nothing, to support his argument to the contrary, except to note that the State had an unsigned copy of the warrant at the hearing. Having resolved that the State in fact also had a signed copy of the warrant, there is nothing to support Jackson's argument.

Therefore, for all of the foregoing reasons, the Court finds that Jackson has not established that the evidence in question was seized at a time when the officers were without authority to conduct the search and seizure operation. Accordingly, his related claim that counsel was ineffective in failing to argue that the evidence was improperly seized on that basis necessarily fails.

To the extent that Jackson contends that Monica McKinney should have been called as a witness at trial to refute the timing of the warrant, the Fifth Circuit has held that complaints of uncalled witnesses are not favored in federal habeas corpus review of an ineffective assistance of counsel claim, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). Because Jackson has not presented any evidence to the state courts or this federal court that McKinney would have testified to this effect, counsel cannot be deemed ineffective for failing to call her as a witness. Moreover, based on the officers's testimony regarding the warrant, Jackson has failed to show any prejudice, because he has not shown that the evidence seized from the McKinney residence would have been excluded had Monica McKinney testified.

17

In a similar regard, to the extent Jackson may suggest under a broad reading that counsel should have continued to challenge the validity of the warrant at trial, his claim fails to present a deficiency in counsel's performance.  Once the motion to suppress was denied, there was no legal basis for counsel to continue objecting to the evidence throughout trial, and his failure to do so did not constitute ineffective assistance of counsel.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that counsel is not required to make futile motions or objections).  Jackson fails to show that, had counsel continued to object to the evidence, that the objections would have been sustained and the evidence excluded.  He, therefore, has not shown deficient performance nor prejudice in this regard.

This Court finds that petitioner has failed to demonstrate that the state court's decision denying either of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Jackson is not entitled to relief on this claim.

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Melvin Jackson's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 15th day of February, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.